Slip Op. 19-32

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **APPLE INC.,** | |
| **Plaintiff,** | **Before: Claire R. Kelly, Judge** |
| **v.** | **Court No. 13-00239** |
| **UNITED STATES,** | **PUBLIC VERSION** |
| **Defendant.** | |

## <u>OPINION</u>

[Denying Plaintiff's motion for summary judgment and granting Defendant's cross-motion for summary judgment.]

Dated: March 11, 2019

<u>David Phillips Sanders</u>, Cassidy Levy Kent (USA) LLP, of Washington, DC, argued for plaintiff Apple Inc.  With him on the brief was <u>Nina Ritu Tandon</u>.

<u>Beverly A. Farrell</u>, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, of New York, NY, argued for defendant. With her on the brief were <u>Amy M. Rubin</u>, Assistant Director, and <u>Chad A. Readler</u>, Acting Assistant Attorney General.  Of Counsel on the brief was <u>Paula S. Smith</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Kelly, Judge:  The action before the court concerns the classification of two models of the iPad 2 Smart Cover ("Smart Cover").  Plaintiff, Apple, Inc., moves for summary judgment, requesting the court find, as a matter of law, that both models of Plaintiff's imports are properly classified within subheading 8473.30.51, Harmonized Tariff

**PUBLIC VERSION**

Schedule of the United States (2011) ("HTSUS"),[1] and order United States Customs and

Border Protection ("CBP" or "Customs") to reliquidate the subject merchandise as such

and refund the excess duties paid with interest.  Pl.'s Mem. Law Supp. of Pl.'s Mot.

Summary J., Mar. 1, 2019, ECF No. 117-1 ("Pl.'s Br.").[2]  Defendant opposes the motion

and cross-moves for summary judgment, requesting the court find, as a matter of law,

that imports of the Smart Cover model with the plastic outer layer are properly classified

within subheading 3926.90.99, HTSUS.  See Def.'s Mem. Law Opp'n Pl.'s Partial Mot.

Summary J. & Supp. Def.'s Cross-Mot. Partial Summary J. at 8–20, Jan. 27, 2017, ECF

No. 69 ("Def.'s Resp. Br.").   Defendant also argues that this Court does not have

jurisdiction to hear Plaintiff's challenge to CBP's classification of the Smart Cover model

with the leather outer layer because that merchandise was liquidated duty-free and

Plaintiff can claim no injury for which this Court can provide a remedy.  See id. at 7–8;

Def.'s Resp. Pl.'s Suppl. Br. at 3–6, Jan. 19, 2018, ECF No. 102 ("Def.'s Suppl. Br.").  For

the reasons that follow, Plaintiff's motion is denied and Defendant's cross-motion is

granted.

---

[1] All references to the HTSUS refer to the 2011 edition, the most recent version of the HTSUS in effect at the time of the last entries of Plaintiff's merchandise.  See Am. Compl. ¶ 3, Aug. 2, 2013, ECF No. 11; Answer to Am. Compl. ¶ 3, Dec. 9, 2013, ECF No. 19.

[2] Plaintiff refiled the confidential and public versions of its moving brief in compliance with the court's February 8, 2019, letter notifying the parties of their inconsistent and significant use of bracketing and requesting the parties confer, review, and refile corrected versions.  Ct.'s Letter Regarding Use of Brackets, Feb. 8, 2019, ECF No. 107.  Plaintiff also refiled the exhibits that are attached to its moving brief; docketed at ECF Nos. 116-2 (confidential) and 117-2 (public).  No substantive changes were made.  Plaintiff did not file a new copy of its motion for summary judgment or a new appendix.  Plaintiff's original moving brief has been sealed and is docketed at ECF Nos. 60-1 and 61-1, filed September 23, 2016.  Defendant did not refile any of its briefs.

## BACKGROUND

At issue is the proper classification of one entry containing two models of a product known as the "Smart Cover" for the Apple iPad 2.  See Def.'s Statement Material Facts as to Which There are no Genuine Issues to be Tried ¶ 1, Mar. 1, 2019, ECF No. 115-1 ("Def.'s 56.3 Statement");[3] Pl.'s Resp. [Def.'s 56.3 Statement] ¶ 1, Mar. 1, 2019, ECF No. 117-3 ("Pl.'s Resp. Def.'s 56.3 Statement").  On July 8, 2011, CBP liquidated the plastic Smart Cover under subheading 6307.90.98, HTSUS,[4] dutiable at seven percent, and the leather Smart Cover under subheading 4205.00.80, HTSUS,[5] duty-free.  Am. Compl. ¶ 4, Aug. 2, 2013, ECF No. 11 ("Am. Compl."); Answer to Am. Compl. ¶ 4, Dec. 9, 2013, ECF No. 19 ("Answer"); Def.'s 56.3 Statement ¶¶ 4–5; Pl.'s Resp. Def.'s 56.3 Statement ¶¶ 4–5.

Plaintiff timely filed an administrative protest asserting that the proper classification for the leather and plastic Smart Cover is subheading 8473.30.51, HTSUS, duty-free. Am. Compl. ¶¶ 5–7; Answer ¶¶ 5–7.  Subheading 8473.30.51, HTSUS, covers:

---

[3] The docket contains several versions of the parties' USCIT R. 56.3 statements and associated responses.  These include, Defendant's original USCIT R. 56.3 statement and response to Plaintiff's USCIT R. 56.3 statement docketed at ECF Nos. 69-1–2 and 70-1–2, filed January 27, 2017; refiled versions of the same reflecting updated bracketing to capture additional confidential information docketed at ECF Nos. 85 and 86, filed August 7, 2017; and, finally, Plaintiff's and Defendant's USCIT R. 56.3 statements and associated responses filed on March 1, 2019, to comply with the court's request that parties confer, review, and refile these submissions in light of the significant and inconsistent use of bracketing therein. Ct.'s Letter Regarding Use of Brackets at 1–2.  No substantive changes were made, and the versions filed prior to March 1, 2019, have been sealed.

[4] Subheading 6307.90.98, HTSUS, covers "Other made up articles, including dress patterns: Other: Other."

[5] Subheading 4205.00.80, HTSUS, covers "Other articles of leather or of composition leather: Other: Other: Other."

> Parts and accessories (other than covers, carrying cases and the like) suitable for use solely or principally with machines of headings 8469 to 8472: Parts and accessories of the machines of heading 8471: Other.

Subheading 8473.30.51, HTSUS.  In the interim between filing its protest and CBP issuing a ruling, Plaintiff submitted a letter to the Center of Excellence and Expertise in Long Beach, California, seeking classification guidance; the letter prompted the generation of an Internal Advice Request.  See Am. Compl. ¶ 8; Answer ¶ 8.  On October 9, 2012, CBP's Office of International Trade, Commercial and Trade Facilitation Division ("CBP Headquarters"), responded to the request and issued ruling HQ H216396.  Am. Compl. ¶ 9; Answer ¶ 9.  The ruling addressed the proper classification of leather and plastic covers, the model numbers of which are not covered by Plaintiff's protest but that are materially similar to the leather and plastic Smart Covers at issue here.  See Am. Compl. ¶ 9; Answer ¶ 9; Exs. to Pl.'s Mem. Law. Supp. Mot. Summary J. at Ex. D at 1–3, Mar. 1, 2019, ECF No. 117-2 ("HQ H216396")[6] (reproducing the ruling and describing the two models at issue as iPad Smart Covers with a microfiber lining capable of buffing off fingerprints or smudges and a top layer consisting of either plastic or leather).  The ruling rejected Plaintiff's position that the iPad Smart Covers, leather and plastic, are classifiable under heading 8473, HTSUS, and instead ruled that the plastic iPad Smart Cover is properly classified under subheading 3926.90.99, HTSUS ("Other articles of plastics and articles of other materials of headings 3901 to 3914: Other: Other"), dutiable at a rate of

---

[6] Although CBP Headquarters' ruling relied on the 2012 editions of the HTSUS and Explanatory Notes, the implicated headings, subheadings, and explanatory notes are substantively the same in relevant part to the 2011 editions on which this court's analysis relies.

5.3%, and the leather iPad Smart Covers under subheading 4205.00.80, HTSUS ("Other

articles of leather or of composition leather: Other: Other: Other"), duty-free.  See Am.

Compl. ¶ 10; Answer ¶ 10; HQ H216396 at 5–8.  On January 9, 2013, CBP denied

Plaintiff's protest, did not reliquidate the merchandise at the tariff classifications identified

in the ruling, and continued to apply the classifications and duty rates under which the

imports were liquidated.  See Am. Compl. ¶¶ 11–13; Answer ¶¶ 11–13.

Plaintiff commenced this action to contest CBP's denial of its protest.  Summons,

July 2, 2013, ECF No. 1 (subsequently amended by ECF No. 10); Compl., July 2, 2013,

ECF No. 5 (subsequently amended by ECF No. 11).  Plaintiff alleges that both models of

its merchandise are properly classified within subheading 8473.30.51, HTSUS.  Am.

Compl. at 7; see Pl.'s Br. at 15–31.  Specifically, Plaintiff alleges that although heading

8473, HTSUS, excludes "covers, carrying cases and the like," the Harmonized

Commodity Description and Coding System's Explanatory Notes ("Explanatory Notes")

to that heading carve out an exception to the exclusion for covers that are also stands,

like the Smart Cover.  See Pl.'s Br. at 20–26.  The Explanatory Note Plaintiff invokes

states,

> [b]ut [ ] heading [8473, HTSUS] excludes covers, carrying cases and felt
> pads: these are classified in their appropriate headings. It also excludes
> articles of furniture (e.g. cupboards or tables) whether or not specifically
> designed for office use (heading 94.03). However, stands for machines of
> headings 84.69 to 84.72 not normally usable except with the machines in
> question, remain in this heading.

EN 84.73.  Defendant contends that the plastic Smart Cover model is not classifiable

within subheading 8473.30.51, HTSUS, because it is a cover and covers are explicitly

excluded from that subheading and that the Explanatory Note's exception applies to stands of furniture, which the Smart Cover is not.  See Def.'s Resp. Br. at 10–17.  As to the leather Smart Cover model, Defendant contends that Plaintiff failed to allege a redressable injury and that the claim should be dismissed for lack of jurisdiction.  See id. at 7–8.  On September 20, 2017, the court held oral argument.  Partially Closed Oral Arg., Sept. 20, 2017, ECF No. 87 ("Oral Arg.").

This action was reassigned pursuant to 28 U.S.C. § 253(c) (2012)[7] and Rule 77(e)(4) of the Rules of the U.S. Court of International Trade.  See Order of Reassignment, Jan. 9, 2019, ECF No. 104.

### STANDARD OF REVIEW

The court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  USCIT R. 56(a).  In order to raise a genuine issue of material fact, it is insufficient for a party to rest upon mere allegations or denials, but rather that party must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastic Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006); Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984).

---

[7] Further citations to Titles 19 and 28 of the U.S. Code are to the 2012 edition.

## UNDISPUTED FACTS

Plaintiff is the importer of record of the merchandise in the one entry at issue in this case, which entered at the port of San Francisco International Airport, San Francisco, California on January 28, 2011.  Am. Compl. ¶ 20; Answer ¶ 20; Pl.'s [56.3 Statement] ¶ 2, Mar. 1, 2019, ECF No. 117-2 ("Pl.'s 56.3 Statement") (appearing as Ex. A to Pl.'s Br.); Def.'s Resp. Pl.'s [56.3 Statement] ¶ 2, Mar. 1, 2019, ECF No. 115-2 ("Def.'s Resp. Pl.'s 56.3 Statement").  The merchandise consists of two models of the Smart Cover.  Def.'s 56.3 Statement ¶ 1; Pl.'s Resp. Def.'s 56.3 Statement ¶ 1.  The two models differ as to their outer layer—one is composed of plastic,[8] the other of leather.  Def.'s 56.3 Statement ¶ 3; Pl.'s Resp. Def.'s 56.3 Statement ¶ 3.  CBP liquidated the former merchandise under subheading 6307.90.98, HTSUS, dutiable at seven percent, and the latter merchandise under subheading 4205.00.80, HTSUS, duty free.  Def.'s 56.3 Statement ¶¶ 4–5; Pl.'s Resp. Def.'s 56.3 Statement ¶¶ 4–5.  Plaintiff filed a timely protest.  Pl.'s 56.3 Statement ¶¶ 4–5; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 4–5.

The Smart Cover is rectangular in shape and is constructed of rectangular panels that enable the user to fold the Smart Cover into a "stand" position or to reveal the iPad 2's back facing camera.  Pl.'s 56.3 Statement ¶ 12; Def.'s Resp. Pl.'s 56.3 Statement ¶ 12; Def.'s 56.3 Statement ¶¶ 27, 35; Pl.'s Resp. Def.'s 56.3 Statement ¶¶ 27, 35.  It is sized to fit directly and precisely over the screen of an iPad 2, and was designed to be

---

[8] Although both parties agree that the outer layer of one model is composed of plastic, see, e.g., Def.'s 56.3 Statement ¶ 3, Pl.'s Resp. Def.'s 56.3 Statement ¶ 3, Plaintiff avers that the outer layers are more specifically "comprised of polyethylene and polyurethane."  Pl.'s Resp. Def.'s 56.3 Statement ¶ 3.

used exclusively and only with that device.  Pl.'s 56.3 Statement ¶¶ 16–19; Def.'s Resp.

Pl.'s 56.3 Statement ¶¶ 16–19.  The Smart Cover's spine is an aluminum hinge.  Def.'s

56.3 Statement ¶ 17; Pl.'s Resp. Def.'s 56.3 Statement ¶ 17.  The Smart Cover aligns

with the iPad 2 by means of magnets that are integrated into the edge of the iPad 2 and

the Smart Cover's spine.  Pl.'s 56.3 Statement ¶ 20; Def.'s Resp. Pl.'s 56.3 Statement ¶

20.  The magnets in the Smart Cover also allow it to remain attached to the iPad 2 when

it is in transport or being moved.  Def.'s 56.3 Statement ¶ 22; Pl.'s Resp. Def.'s 56.3

Statement ¶ 22.

      The iPad 2 is a portable device, Def.'s 56.3 Statement ¶ 29; Pl.'s Resp. Def.'s 56.3

Statement ¶ 29, and is an automatic data processing machine classifiable under heading

8471, HTSUS.  Pl.'s 56.3 Statement ¶ 11; Def.'s Resp. Pl.'s 56.3 Statement ¶ 11.  The

Smart Cover serves a subordinate function to the iPad 2 and is not essential to that

machine's operation.  Pl.'s 56.3 Statement ¶¶ 23, 25; Def.'s Resp. Pl.'s 56.3 Statement

¶¶ 23, 25.  The iPad 2 contains a sensor that can detect whether the Smart Cover is open

or closed.  Def.'s 56.3 Statement ¶ 24; Pl.'s Resp. Def.'s 56.3 Statement ¶ 24.  Magnets

in the Smart Cover align with the sensor to darken and illuminate the screen.  Pl.'s 56.3

Statement ¶ 35; Def.'s Resp. Pl.'s 56.3 Statement ¶ 35.  Specifically, when the Smart

Cover is closed, the iPad 2 automatically enters sleep mode, and when it is open, the

iPad 2 turns on without the user pressing any buttons.  Def.'s 56.3 Statement ¶ 23; Pl.'s

Resp. Def.'s 56.3 Statement ¶ 23; Pl.'s 56.3 Statement ¶ 35; Def.'s Resp. Pl.'s 56.3

Statement ¶ 35.  When the Smart Cover is closed, its microfiber lining comes in direct

contact with the screen of the iPad 2, Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3

Statement ¶ 13, and keeps the screen clean by "gently buff[ing] off any smudges or fingerprints[.]"  Def.'s 56.3 Statement ¶¶ 19–20; Pl.'s Resp. Def.'s 56.3 Statement ¶¶ 19–20.  The merchandise ⟦                                                                   ⟧  Def.'s 56.3 Statement ¶ 18; Pl.'s Resp. Def.'s 56.3 Statement ¶ 18.  The Smart Cover can be folded into two different positions that prop up the iPad 2 to facilitate video watching and typing.  Pl.'s 56.3 Statement ¶¶ 27–28; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 27–28; Def.'s 56.3 Statement ¶ 25; Pl.'s Resp. Def.'s 56.3 Statement ¶ 25.  When the Smart Cover is folded it creates a triangular position.  Pl.'s 56.3 Statement ¶ 12; Def.'s Resp. Pl.'s 56.3 Statement ¶ 12.

## DISCUSSION

### I. Jurisdiction

The Court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [Tariff Act of 1930, as amended, 19 U.S.C. § 1515]," 28 U.S.C. § 1581(a), and reviews such actions de novo.   28 U.S.C. § 2640(a)(1).  The party seeking the Court's jurisdiction has the burden of establishing that jurisdiction exists.  See Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006); see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The Constitution constrains the federal courts' jurisdiction to cases which involve "actual cases or controversies."  Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."); see U.S. Const. art. III, § 2, cl. 1.  "[T]he core component of standing

is an essential and unchanging part of the case-or-controversy requirement of Article III."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To establish standing, plaintiff

must demonstrate that its claim represents an "injury in fact."  Id.  An "injury in fact" is

"concrete and particularized" and "actual or imminent, not conjectural or hypothetical[,]"

"fairly traceable to the challenged action," and "likely" to be "redressed by a favorable

decision."  Id. at 560–61.  Accordingly, regardless of a statutory grant of jurisdiction, the

court must dismiss as non-justiciable any claim that fails to meet Article III criteria.

Plaintiff challenges CBP's decision to classify the leather Smart Cover under

subheading 4205.00.80, HTSUS, a duty-free provision.  Plaintiff alleges that although it

incurred no duty upon liquidation, it nevertheless suffered an injury in fact as a result of

needing to expend additional administrative costs to process, enter, and submit separate

entry paperwork for the leather and plastic Smart Covers.  See Pl.'s Post-Hearing Suppl.

Br. at 1–3, Mar. 1, 2019, ECF No.117-4 ("Pl.'s Suppl. Br.").[9]  Plaintiff also claims incorrect

CBP classification decisions distort statistical records, which in turn affect its business

strategies as to sales and manufacturing.[10]  Id. at 2.  Finally, Plaintiff contends that all

---

[9] In compliance with the court's February 8, 2019, letter, Plaintiff refiled the corrected confidential and public versions of its supplemental briefing; the original briefs can be found at ECF Nos. 94 and 95, filed November 30, 2017.  Plaintiff did not refile the exhibits attached to the supplemental briefing.

[10] Plaintiff's argument that this Court has recognized, as a cognizable injury in fact, a competitive injury arising out of an incorrect categorization of an entry, see Pl.'s Suppl. Br. at 2 (citing Luggage & Leather Goods Mfrs. Of America, Inc. v. United States, 7 CIT 258, 268–69, 588 F. Supp. 1413, 1421–22 (1984)), is not persuasive.  Unlike Plaintiff here, the plaintiffs in Luggage & Leather Goods, a domestic trade association and labor union, submitted uncontradicted evidence that the President's designation of a product as duty-free had caused them injury by negatively affecting their profitability, sales, employment, and economic health.  See Luggage & Leather Goods, 7 CIT at 260, 268–69, 588 F. Supp. at 1415–16, 1421–22.  In that case, therefore, the plaintiffs had alleged an actual and not speculative economic harm and supported their allegation.

Smart Covers need to be classified consistently, regardless of the material composing its outer layer, to ensure consistency in and clarity of classification decisions.  Id. at 2–3. Defendant argues that Plaintiff's identified injuries do not rise to the level of a justiciable case or controversy.  See Def.'s Suppl. Br. at 4–6.

Plaintiff does not have standing to challenge Customs' classification of the leather Smart Covers and therefore its claim is non-justiciable.  Here, the leather Smart Covers were liquidated duty-free.  Def.'s 56.3 Statement ¶ 5; Pl.'s Resp. Def.'s 56.3 Statement ¶ 5.  This Court has held that challenges to the correctness of Customs' classification decisions where the liquidation is duty-free present a "moot question or an abstract proposition" because plaintiff has not suffered an injury or harm that the court's order can redress.  See 3V, Inc. v. United States, 23 CIT 1047, 1049–52, 83 F. Supp. 2d 1351, 1353–55 (1999).  Plaintiff's other bases for injury are broad and non-specific in nature and invoke unsubstantiated and speculative future economic harm.[11]  Accordingly,

---

[11] To the extent Plaintiff alleges economic injury, i.e., additional administrative costs it will incur by having to enter the plastic and leather Smart Covers under different subheadings of the HTSUS, Pl.'s Suppl. Br. at 1–2, such injury is hypothetical and speculative.  Plaintiff explains that it

> devotes significant time and employee resources to administrative work required in order to enter its merchandise. This administrative work includes, in no small part, data entry, coding, completing and filing forms necessary to enter goods into the United States pursuant to legal requirements. Should the denial of Plaintiff's protest by United States Customs and Border Protection ("CBP") in connection with the classification of the Smart Cover as reflected in HQ H216396 stand, Plaintiff will suffer economic injury in the form of lost resources resulting from the necessity to do additional administrative work in order to enter the Smart Covers with outer material of plastic under subheading 3926.90.99, HTSUS, and the Smart Covers with outer material of leather under subheading 4205.00.80, HTSUS.

(footnote continued)

Plaintiff failed to demonstrate that it suffered a legally cognizable injury arising from

Customs' classification of the leather Smart Covers and its claim must be dismissed on

Constitutional grounds.   The Court, however, does have jurisdiction over Plaintiff's claim

challenging Customs' classification of the plastic Smart Cover under subheading

6307.90.98, HTSUS, dutiable at seven percent.   Plaintiff argues the plastic Smart Cover

should be classified in subheading 8473.30.51, HTSUS, duty-free, and seeks a refund of

the duties collected with interest.   See Pl.'s Br. at 15–32; Am. Compl. at 7.   Plaintiff has,

therefore, alleged an economic injury that can be redressed by this court's order and this

Court has jurisdiction over that claim pursuant to 28 U.S.C. § 1581(a).

## II.   Classification of the Plastic Smart Covers

Classification involves two steps.   First, the court determines the proper meaning

of the tariff provisions, which is a question of law.   See Link Snacks, Inc. v. United States,

742 F.3d 962, 965 (Fed. Cir. 2014).    Second, the court determines whether the

merchandise properly falls within the scope of the tariff provisions, which is a question of

fact.   Id.   Where there is no genuine "dispute as to the nature of the merchandise, then

the two-step classification analysis collapses entirely into a question of law."  Id. at 965–

66 (citation omitted).   In such a case, the court must determine "whether the government's

---

Id.   Thus, Plaintiff's alleged injury is that it will be economically harmed by the added necessity of filling out extra entry paperwork and/or expending more resources to process paperwork that involves an additional HTS number.   Plaintiff makes no attempt to specifically identify or quantify these costs.   The court refuses to recognize, as a basis for standing, theoretical costs incurred by a party or its staff needing to record, track, or otherwise process additional HTS numbers.   Further, the recovery of hypothetical administrative costs or costs relating to business strategies are not among the remedies available for actions brought under 28 U.S.C. § 1581(a), as enumerated in 19 U.S.C. § 1514(a).

classification is correct, both independently and in comparison with the importer's

alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).  The

court must find the correct classification, irrespective of the subheadings asserted by the

parties.  See id.

### A.  The Meaning of the Tariff Terms

#### 1.  Heading 8473, HTSUS

Classification of merchandise under the HTSUS is governed by the principles set

forth in the General Rules of Interpretation ("GRIs"), which are part of the HTSUS statute.

See Roche Vitamins, Inc. v. United States, 772 F.3d 728, 730 (Fed. Cir. 2014).  The GRIs

are applied in numerical order beginning with GRI 1.  When determining the correct

classification for merchandise, the court first construes the language of the headings in

question "and any relative section or chapter notes."  GRI 1; La Crosse Technology, Ltd.

v. United States, 723 F.3d 1353, 1358 (Fed. Cir. 2013); BenQ Am. Corp. v. United States,

646 F.3d 1371, 1376 (Fed. Cir. 2011).  The terms of the HTSUS are "construed according

to their common and commercial meanings, which are presumed to be the same."  Carl

Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing Simod Am. Corp.

v. United States, 872 F.2d 1572, 1576 (Fed. Cir. 1989)).  The court defines HTSUS tariff

terms relying upon its own understanding of the terms and "may consult lexicographic

and scientific authorities, dictionaries, and other reliable information sources."  Carl Zeiss,

Inc., 195 F.3d at 1379 (citation omitted).  A heading that describes goods according to

"their common and commercial meaning[,]" is an eo nomine provision and "will ordinarily

include all forms of the named article."  Id. (citations omitted).

The court may also be aided by the Explanatory Notes to help construe the relevant

chapters where appropriate.  See StoreWALL, LLC v. United States, 644 F.3d 1358, 1363

(Fed. Cir. 2011).  Although the "Explanatory Notes are not legally binding, [they] may be

consulted for guidance and are generally indicative of the proper interpretation of a tariff

provision."  Roche Vitamins, 772 F.3d at 731.  GRI 2 applies to unfinished or incomplete

articles and mixtures or combinations of materials or substances.[12]

The court resorts to GRI 3 to determine the proper classification of a good that is

prima facie classifiable under two or more headings of the HTSUS.  When such a good

is before the court, classification shall be based upon the following:

> (a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

> (b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they

---

[12] GRI 2 provides:

> (a) Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled.

> (b) Any reference in a heading to a material or a substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances. Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance.

GRI 2.

consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

(c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

GRI 3(a)–(c).[13]

Heading 8473, HTSUS, covers "Parts and accessories (other than covers, carrying cases and the like) suitable for use solely or principally with machines of headings 8469 to 8472."  The court discerns the common and commercial meanings of "accessory" and "covers" as found in subheading 8473.30.51, HTSUS, aided by dictionary definitions.

The term "accessory" is not defined by either the HTSUS or in the Explanatory Notes.  Several dictionary definitions aid the court in discerning the common and commercial meaning of "accessory."  See Accessory, Merriam-Webster.com, available at https://www.merriam-webster.com/dictionary/accessory (last visited Mar. 6, 2019) (Accessory: 1a : an object or device that is not essential in itself but adds to the beauty, convenience, or effectiveness of something else; b: a thing of secondary or lesser importance); Webster's Third New International Dictionary 11 (Philip Babcock Gove, Ph.D. & Merriam-Webster Editorial Staff eds. 1993) (Accessory: 1 a: a thing of secondary or subordinate importance (as in achieving a purpose or an effect) . . . b (1): an object or

---

[13] GRI 6 guides the court's determination of the appropriate subheading for the merchandise at issue and provides that

the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the above [GRIs], on the understanding that only subheadings at the same level are comparable.

GRI 6.

device that is not essential in itself but that adds to the beauty, convenience, or effectiveness of something else); Accessory, The American Heritage Dictionary of the English Language 10 (4th ed. 2000) (Accessory: 1.a. A subordinate or supplementary item; an adjunct. b. Something nonessential but desirable that contributes to an effect or result);                  Accessory,                  oed.com,                  available                  at http://www.oed.com/view/Entry/1046?redirectedFrom=accessory#eid (last visited Mar. 6, 2019) (Accessory: 2.a. A subordinate or auxiliary thing; an adjunct; an accompaniment); see also Rollerblade, Inc. v. United States, 24 CIT 812, 816–17, 116 F. Supp. 2d 1247, 1253 (defining the term "accessory" and finding that an accessory "must relate directly to the thing accessorized[ ]" and serve a subordinate or secondary function to the article at issue), aff'd 282 F.3d 1349, 1352 (Fed. Cir. 2002) (adopting the lower court's conclusion that an "'accessory' must bear a direct relationship to the primary article that it accessories."). An "accessory" is therefore something that relates directly to and serves a secondary or subordinate function to the item accessorized.

Heading 8473, HTSUS, however, affirmatively excludes parts or accessories that are "covers, carrying cases and the like[.]" Explanatory Note 84.73 to Chapter 84 (2011).[14] Reading the heading with the exclusion in mind, a cover or an item that is like a cover and a carrying case, even if produced as an accessory that is "suitable for use solely or principally with the machines of headings 84.69 to 84.72," is not included in heading 8473, HTSUS.

---

[14] All citations to the Explanatory Notes are to the 2011 version, the most recently promulgated edition at the time of the entries of the merchandise.

Several dictionary definitions aid the court in discerning the common and commercial meaning of "cover."   See Cover, Oxford English Dictionary Vol. XIX, 1073 (J.A. Simpson & E.S.C. Weiner eds., Oxford University Press, 2nd ed. 1989) (Cover: I.1.a. That which covers: anything that is put or laid over, or that naturally overlies or overspreads an object, with the effect of hiding, sheltering, or enclosing it, often a thing designed or appropriated for the purpose; 3.d. Something that hides, conceals, or screens; a cloak, screen, disguise, pretense.); Cover, The American Heritage Dictionary of the English Language 432 (4th ed. 2000) (Cover: 1. Something that covers or is laid, placed, or spread over or upon something else, as: a. A lid or top. b. A binding or enclosure of a book or magazine. c. A protective overlay, as for a mattress or furniture); Cover,                                oed.com,                                available                                at http://www.oed.com/view/Entry/43347?rskey=CFS7RB&result=1&isAdvanced=false#eid (last visited Mar. 6, 2019) (Cover:  I. Generally: something that covers. 1.a. That which covers: anything that is put or laid over, or that naturally overlies or overspreads an object, with the effect of hiding, sheltering, or enclosing it; often a thing designed or appropriated for the purpose.); Cover, Merriam-Webster.com, available at https://www.merriam-webster.com/dictionary/cover (last visited Mar. 6, 2019) (Cover: 2: something that is placed over or about another thing: . . . c: an overlay or outer layer especially for protection); Webster's Third New International Dictionary 524 (Philip Babcock Gove, Ph.D. & Merriam-Webster Editorial Staff eds. 1993) (Cover: as a verb, 3: to put, lay, or

spread something over, on, or before (as for protecting, enclosing, or masking)).[15]   A

"cover" is therefore something that goes over or encompasses a specific object and offers

protection.

The Explanatory Notes, although not controlling, provide interpretive guidance.

E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004).  The language of

an Explanatory Note, however, may not be read as to contradict or narrow the language

of the heading.  See Sigma-Tau HealthScience, Inc. v. United States, 838 F.3d 1272,

1280–81 (Fed. Cir. 2016).  The Explanatory Notes to heading 8473, HTSUS, include a

standalone paragraph composed of three sentences that identify items that are excluded

from that heading and establish an exception to the exclusion for a specific kind of item.

EN 84.73.  First, it states that "covers, carrying cases and felt pads" are excluded from

heading 8473, HTSUS, and directs such items to "be classified in their appropriate

headings."  Id.  Subsequently, in the second sentence, it states that "articles of furniture

(e.g., cupboards and tables) whether or not specifically designed for office use (heading

94.03)" are also excluded.   Id.  However, the third sentence provides that "stands for

machines of headings 84.69 to 84.72 not normally usable except with the machines in

---

[15] Defendant provides three additional definitions for "cover"—"[a]nything that covers, as a bookbinding, the front binding of a magazine, jar lid, box top, etc." Def.'s Resp. Br. at 11 (quoting Webster's New World Dictionary, 320 (3rd College Ed. 1988)); "[t]hat which covers or is laid over something else. 2. Shelter; protection; concealment, as from enemy fire;" and, as a verb, defined as "[t]o place something over or upon, as to protect or conceal[,]" id. (quoting Funk & Wagnalls, Standard College Dictionary, 311 (1973)); and "[s]omething that covers, as the lid of a vessel or the binding of a book...protection; shelter; concealment;" and, as a verb, defined as "to place something over or upon, as for protection or concealment[,]" id. (quoting The Random House Dictionary of the English Language, 336 (1969)).  Plaintiff did not provide any definitions for "cover" to the court.

question, remain in [ ] heading [8473]." Id.  Therefore, the first sentence identifies items

that are affirmatively excluded from heading 8473, HTSUS, i.e., "covers, carrying cases

and felt pads" and provides that such items are classifiable under other headings.  EN

84.73.  The first sentence is a complete thought that identifies items excluded from

heading 8473, HTSUS, and directs how such items should be classified.  The second

sentence introduces "articles of furniture" as "also" being excluded from heading 8473,

HTSUS, and in the third sentence qualifies the scope of the exclusion to retain in heading

8473, HTSUS, stands "not normally usable except" with machines like the iPad 2.  Id.

The Explanatory Note, therefore, carves out an exception for pieces of furniture that are

stands and continues to consider such items as parts or accessories covered by heading

8473, HTSUS.[16]  Otherwise, the Explanatory Note's first sentence would have simply

read "the heading excludes covers, carrying cases, felt pads, and articles of furniture,"

the second sentence would have been omitted, and the sentence that reads, "[h]owever,

stands for machines of headings 84.69 to 84.72, nor normally usable except with the

machines in question, remain in [ ] heading [8473][,]" retained.

---

[16] Plaintiff's supplemental brief argues that a [[          ]] of countries have read heading 8473 to cover Smart Covers for the iPad 2 and that this court should be informed by such rulings for the sake of having a consistent and uniform reading of the HTS.  See Pl.'s Suppl. Br. at 3–4.  This Court reviews Customs' classification de novo, Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006), based on the record made before it.  28 U.S.C. § 2640(a)(1).  The Supreme Court in Mead addressed the level of deference afforded to U.S. Customs rulings, explaining that deference is commensurate with the power to persuade.  See United States v. Mead, 533 U.S. 218, 231–34 (2001).  The rulings of foreign tribunals are entitled to respectful consideration. Cummins, 454 F.3d 1366.  The rulings submitted here do not persuade the court.

### 2. Heading 3926, HTSUS

Subheading 3926.90.99, HTSUS, covers "Other articles of plastics and articles of other materials of headings 3901 to 3914: Other: Other."  Chapter 39 "plastics" refer to

> materials of headings 39.01 to 39.14 which are or have been capable, either at the moment of polymerisation or at some subsequent stage, of being formed under external influence (usually heat and pressure, if necessary with a solvent or plasticiser) by moulding, casting, extruding, rolling or other process into shapes which are retained on the removal of the external influence.

Note 1, Chapter 39, HTSUS.  Further, "textiles and textile articles" of Section XI, of which Chapter 63 is part, are not covered by Chapter 39.  Note 2(p), Chapter 39, HTSUS. Heading 3926, HTSUS, is an "other" provision and covers articles of plastic not classifiable elsewhere in Chapter 39.  Heading 3926, HTSUS, subdivides into subheadings that identify more specifically "other" kinds of plastics covered and include items such as rain apparel, school or office supplies, furniture fittings, imitation gemstones and beading, and apparel and like accessories.  Subheading 3926.90.99, HTSUS, is the final subdivision and covers any other remaining articles of plastic.

### 3. Heading 6307, HTSUS

Subheading 6307.90.98, HTSUS, covers "Other made up articles, including dress patterns: Other: Other."  Goods classified under heading 6307, HTSUS, are "made up articles of any textile material" that are not mentioned elsewhere in the Nomenclature or specifically included in headings of Section XI (covering Chapters 50 through 63 of the HTSUS).  EN 63.07.  Heading 6307, HTSUS, is an "other" provision that covers made up articles of any textile materials not classifiable under headings 6301 through 6306,

HTSUS.  Heading 6307, HTSUS, subdivides into subheadings that cover a wide range of "other" made up textile articles like dishcloths and similar cleaning cloths, lifebelts and lifejackets, lacings for corsets and footwear, surgical towels and specific bedding items, pet toys, and banners.  Subheading 6307.90.98, HTSUS, is the final subdivision and covers any other remaining articles made of textile fabric.

### B.  The Merchandise at Issue

Here, there is no dispute as to the characteristics of Plaintiff's merchandise.  The parties agree that the Smart Cover serves a subordinate function to the iPad 2 and is not essential to that machine's operation.  Pl.'s 56.3 Statement ¶¶ 23, 25; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 23, 25.  The parties also agree that the Smart Cover was designed to fit precisely over the iPad 2, that it attaches to the iPad 2 by means of magnets that are embedded into the edge of the iPad 2 and the spine of the Smart Cover, and that it may be folded as to elevate the iPad 2 and facilitate video watching and typing.  Pl.'s 56.3 Statement ¶¶ 17–20, 28; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 17–20, 28.  Further, the parties agree that the Smart Cover's microfiber lining comes in direct contact with the screen of the iPad 2 when in the closed position, Pl.'s 56.3 Statement ¶ 13; Def.'s Resp. Pl.'s 56.3 Statement ¶ 13, and keeps the screen clean by "gently buff[ing] off any smudges or fingerprints[.]"  Def.'s 56.3 Statement ¶¶ 19–20; Pl.'s Resp. Def.'s 56.3 Statement ¶¶ 19–20.  Specifically, it [[                                                   ]].  Def.'s 56.3 Statement ¶ 18; Pl.'s Resp. Def.'s 56.3 Statement ¶ 18.

An "accessory" is something that relates directly to and serves a secondary or subordinate function to the item accessorized.  A "cover" is something that goes over or

encompasses a specific object and offers protection.  The undisputed facts establish that

the Smart Cover meets both the definition of an accessory and of a cover.  A Smart Cover

is an accessory because it serves a subordinate function to the item it accessories, i.e.,

the iPad 2.  The Smart Cover also meets the requirements of the definition of a cover

because it perfectly overlays and hides the screen of the iPad 2, thereby serving a

protective function.  Therefore, although the Smart Cover is an accessory, it is also a

cover and "covers, carrying cases and the like" are excluded from heading 8473, HTSUS.

Nothing in the Explanatory Note contradicts the court's construction of the

exclusionary language in heading 8473, HTSUS, or its application in this case.  In fact,

Explanatory Note 84.73 states that "covers, carrying cases and felt pads" are excluded

from heading 8473, HTSUS, and only carves out an exception for articles of furniture that

have stand capabilities and that are "not normally usable except" with machines listed in

headings 84.69 through 84.72, of which the iPad 2 is part.  Accordingly, even if the Smart

Cover provides a stand function, it is not the kind of stand that the Explanatory Note

encompasses, and it is excluded from heading 8473, HTSUS.[17]

---

[17] Plaintiff argues that because the Smart Cover performs several functions—covers, acts as a stand to facilitate typing and video watching, and conserves battery power—it cannot be reduced to just being a cover.  Pl.'s Br. at 26–27.  Instead, Plaintiff contends that the Smart Cover is a "composite machine," as defined by Note 3 to Chapter 84, and a composite machine's classification is determined by the component "which performs the principal function[;]" which for the Smart Cover, Plaintiff argues, is to be an accessory to the iPad 2.  Id. at 26 (quoting Note 3, Chapter 84).  Plaintiff cannot argue that the Smart Cover is both a composite machine and an accessory to a machine.  Further, Plaintiff misapplies Note 3 to Chapter 84 because a "machine," according to Note 5 to Chapter 84 is defined as "any machine, machinery, plant, equipment, apparatus or appliance cited in the headings of chapter 84 or 85."  Notes 3 and 5, Chapter 84.  A Smart Cover is not a machine recognized by the relevant headings.

(footnote continued)

Plaintiff contends that the Explanatory Note's exception for stands should be read as modifying both the first and second sentences of the standalone paragraph, narrowing the exclusionary language in heading 8473, HTSUS, to "covers, carrying cases and the like" that are not also stands.  See Pl.'s Br. at 22–25; Pl.'s Reply Br. at 9–12.  Plaintiff's suggestion cannot be reconciled with the structure of the standalone paragraph when read in its entirety.  As discussed above, the construction of the standalone paragraph in the Explanatory Note reveals that only stands that are articles of furniture are exempt from the exclusionary language in heading 8473, HTSUS, and remain classified in that heading.  Plaintiff's construction of the Explanatory Note is unpersuasive.[18]

_____

Plaintiff also argues that the Smart Cover is classifiable under heading 8473, HTSUS, "[s]hould the Court choose to analyze [its] classification . . . through GRI 3(b) instead of GRI 1[.]"  See Pl.'s Br. at 27.  Plaintiff's argument misstates how the GRIs, which are statutory, operate.  The GRIs are applied in numerical order and are not simply general interpretive principles that can be mixed and matched.  The court only proceeds to a GRI 3 analysis if a good is prima facie classifiable under two or more headings of the HTSUS.  In fact, the legislative history of the GRIs and relevant case law reveal that the HTSUS is constructed as to enable "most classification questions [to] be answered by GRI 1," and diminish the "need to delve into the less precise inquiries presented by GRI 3."  Telebrands Corp. v. United States, 36 CIT __, __, 865 F. Supp. 2d 1277, 1280 (2012) (footnotes omitted), aff'd, 522 F. App'x 915 (Fed. Cir. 2013).  For the Smart Cover to be prima facie classifiable as an accessory under heading 8473, HTSUS, it cannot be a cover because "covers, carrying cases and the like" are specifically excluded.  As explained above, because the Smart Cover is a cover and is excluded from heading 8473, HTSUS, it cannot be prima facie classifiable in heading 8473, HTSUS, for purposes of triggering a GRI 3 analysis and prompting the court to inquire into the good's essential character.

[18] Plaintiff also argues that the word "stand" can include items that are not strictly articles of furniture and that Defendant acknowledges the broader definition.  Pl.'s Reply Br. at 11–12; see also Oral Arg. at 01:41:23–01:41:42 (stating that Defendant acknowledges that a stand encompasses items other than furniture (citing Def.'s Reply Br. at 12)).  Although Defendant acknowledges that "a stand is not required to be furniture[,]" it argues, and the court agrees, that the context of Explanatory Note 84.73 limits the kinds of stands that remain in heading 8473, HTSUS, to stands that are articles of furniture.  Def.'s Reply Br. at 12.

The undisputed facts demonstrate that the Smart Cover is not solely composed of one material.  In addition to the plastic outer layer, the Smart Cover contains a microfiber lining, an aluminum hinge, and magnets.  Pl.'s 56.3 Statement ¶¶ 13, 20; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 13, 20; Def.'s 56.3 Statement ¶¶ 3, 17; Pl.'s Resp. Def.'s 56.3 Statement ¶¶ 3, 17.  The Smart Cover is therefore a composite good that is prima facie classifiable under either subheading 3926.90.99, HTSUS, that provides for "Other articles of plastics and articles of other materials of headings 3901 to 3914: Other: Other[ ]" or subheading 6307.90.98, HTSUS, that provides for "Other made up articles, including dress patterns: Other: Other."[19]  To classify the Smart Cover, the court must determine which component provides the good its essential character.  GRI 3(b).[20]

The plastic outer layer of the Smart Cover gives the merchandise its essential character.  The plastic layer protects the screen and is the backing onto which the microfiber lining is attached.  Def.'s 56.3 Statement ¶¶ 16, 19; Pl.'s Resp. Def.'s 56.3 Statement ¶¶ 16, 19.  It also encapsulates the magnets that align with the sensor in the

---

[19] Defendant contends that Plaintiff "concedes that the dispute as to the plastic Smart Covers is whether they are properly classifiable in Heading 3926 or Heading 8473."  Def.'s Resp. Br. at 8 (citing Pl.'s Br. at 12).  Plaintiff does not make such a concession on the page Defendant cites and the court, having reviewed all of Plaintiff's submissions, cannot locate such a concession elsewhere.  It is possible that Defendant infers the concession because Plaintiff, in identifying the "Tariff Provisions at Issue" on the cited page, omits subheading 6307.90.98, HTSUS, covering other made up articles of textile material.  Pl.'s Br. at 12.  In any event, the court is charged with finding the correct classification.  Jarvis, 733 F.2d at 878.

[20] Here, the court proceeds to a GRI 3(b) analysis because the Smart Cover is excluded from heading 8473, HTSUS, under GRI 1, and given that GRI 2(b) provides that "[a]ny reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance[,]" and the Smart Cover is both an article of plastic and an article of textile, it is prima facie classifiable in two headings, 3926, HTSUS, and 6307, HTSUS.  The court is therefore statutorily directed to a GRI 3(b) analysis.

**PUBLIC VERSION**

iPad 2 that prompt the machine to enter or exit sleep mode.  Def.'s 56.3 Statement ¶¶

23–24; Pl.'s Resp. Def.'s 56.3 Statement ¶¶ 23–24; Pl.'s 56.3 Statement ¶ 35; Def.'s

Resp. Pl.'s 56.3 Statement ¶ 35.  Finally, the plastic outer layer is the part that is folded

to create the two different positions that prop up the iPad 2 to facilitate video watching

and typing.  Pl.'s 56.3 Statement ¶¶ 27–28; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 27–28.

## CONCLUSION

For the foregoing reasons, the plastic covers are properly classifiable within

subheading 3926.90.99, HTSUS, and Plaintiff's challenge to Customs' classification of

the leather Smart Covers is dismissed.  Therefore, Plaintiff's motion for summary

judgment is denied and Defendant's cross-motion for summary judgment is granted.

Judgment will enter accordingly.


                                                     /s/ Claire R. Kelly
                                                    Claire R. Kelly, Judge


Dated: March 11, 2019
            New York, New York